# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

R. SUE CONNOLLY,

    Plaintiff,

v.

FIRST PERSONAL BANK,

    Defendant.

No. 07 C 5272
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff, R. Sue Connolly ("Connolly"), filed a three-count complaint against Defendant First Personal Bank ("FPB"), alleging violations of the Americans with Disabilities Act of 1990, as amended 42 U.S.C. §§ 12101-12117 ("ADA"). In 2007, Connolly interviewed with Bank President Randall Schwartz for the position of Senior Vice President of Commercial Lending at FPB. On March 26, 2007, Connolly received a letter from Schwartz formally offering her the position of Senior Vice President and Senior Lending Officer at FPB. The offer letter stated that Connolly's employment was contingent upon her satisfactory completion of a pre-employment drug test. Prior to the drug test, Connolly informed Schwartz that she had recently received a cervical epidural shot procedure that might result in additional medication showing up on the test. The test indeed showed a positive result for Phenobarbital. Upon learning of the test results, Schwartz called Connolly and rescinded FPB's offer of employment.

At the time of the drug test, Connolly did in fact have Phenobarbital in her system because it was included in medication that was lawfully prescribed to her by her physician. Connolly contacted Schwartz to remind him that she was on a variety of medications for various medical conditions and offered to have her physicians verify the medications they had prescribed,

including Phenobarbital. Schwartz refused to allow Connolly to explain the presence of Phenobarbital in her system and told Connolly that FPB's decision to rescind her offer of employment was final. Connolly provided Schwartz with a letter from her doctor explaining the nature of the lawfully prescribed medication she was taking at the time of her drug test, and that letter was returned by FPB unopened.

Connolly filed a complaint with this Court on September 18, 2007, and two amended complaints thereafter. Connolly's second amended complaint alleges three counts under the ADA. FPB has moved to dismiss Count III, which alleges that FPB followed a preemployment drug testing policy and a drug screening process which prohibited the use of all legally prescribed medications, in violation of 42 U.S.C. § 12112(d)(3)(C). For the following reasons, FPB's motion to dismiss Count III is denied.

**A. Standard of Review: Motion to Dismiss**

A Rule 12(b)(6) motion tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Serv., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). FPB's motion to dismiss should be granted only if Connolly cannot prove any set of facts in support of her claim that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). I must accept all well-pleaded factual allegation in the complaint as true, drawing all reasonable inferences from those facts in Connolly's favor. *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002). That said, Connolly's "obligation to provide the grounds of [her] entitlement for relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."

*Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).  Her complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

**B.  Analysis**

FPB makes two arguments in support of its motion to dismiss.  First, FPB argues that the drug test administered to Connolly did not violate 42 U.S.C. § 12112 because the drug test was not a medical exam.  Second, FPB contends that Count III fails to state a claim under the ADA because it does not allege that Connolly's job offer was withdrawn based on a disability or a perceived disability.

The ADA generally prohibits discrimination against "a qualified individual with a disability."  42 U.S.C. § 12112(a).  With respect to medical examinations and inquiries, § 12112(d) provides separate rules depending on whether the individual is a job applicant, an applicant with an offer who has not yet begun working, or an employee.

Subsection (d)(1) first states that, generally "[t]he prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries." With respect to job applicants who have not received an offer, subsection (d)(2) provides that an employer may only make preemployment inquiries of an applicant's ability "to perform job-related functions" but not into whether the applicant is disabled.  § 12112(d)(2)(A) and (B). Under subsection (d)(3), which applies to an applicant who has received an offer of employment but who has not yet started work (applicable here), the employer may require a medical examination and make an offer of employment conditional on the results of such examination so long as (1) all employees are subject to such inquiry; (2) information obtained is maintained on separate forms and in separate files and treated as confidential; (3) the results of the examination

are "only used in accordance with this subchapter." § 12112(d)(3); *see also* 29 C.F.R. § 1630.14(b). Regarding the third requirement that the results are "only used in accordance with this subchapter," this means "as long as the employer does not discriminate on the basis of the applicant's disability." *O'Neal v. City of New Albany*, 293 F.3d 998, 1010 n.2 (7th Cir. 2002).[1]

In support of its first argument, FPB relies on 42 U.S.C. § 12114(d)(1), which provides: "a test to determine the illegal use of drugs shall not be considered a medical examination." FPB argues that because tests to determine the presence of illegal drugs do not constitute medical examination under the ADA, Count III should be dismissed because it is based on the premise that the drug test administered to Connolly was a medical examination.

Connolly responds that the drug test she was administered was a test for the use of legal drugs in addition to illegal ones and therefore not the type of test exempt from the rules regarding medical examinations. According to Connolly, because the decision to rescind her offer was based on the result of the exam, FPB was required to show that its exclusionary criteria were job-related and consistent with business necessity. Connolly claims that FPB made its decision to rescind her offer pursuant to its alleged drug policy that prohibited the use of all legally prescribed medication without regard to whether such medication was related to whether she could perform her job responsibilities. She claims that the preemployment drug test, as administered to her, served as a blanket exclusionary test which left no allowance for the legal use of controlled substances. *See Rowles v. Automated Production Systems, Inc.*, 92 F.Supp.2d

---

[1] Finally, although not applicable here, under subsection (d)(4), which applies to employees, the employer may not inquire into whether an employee suffers from a disability unless any such examination is "job-related and consistent with business necessity." § 12112(d)(4)(A); 29 C.F.R. § 1630.14(c).

424, 430 (M.D. Pa. 2000) (holding that employer's drug policy violated the ADA "to the extent that it prohibits the use of all legally prescribed controlled substances without a determination that such prohibition is job-related and consistent with business necessity").

For purposes of the ADA, tests to determine illicit drug use are clearly not medical examinations. However, a test for illicit drug use may also, as in this case, return results for legal drug use that could affect the functioning of the employee in the specific job setting. A sensible reading of the statute instructs that an employer may only rely on a test for illicit drug use to make employment decisions based on that illicit use. A problem arises when, as here, licit drug use appears on the applicant's drug test results and the employer takes some action based on those results. Congress has a long history of enforcement against illicit drug use in this country, but I can't conclude that Congress intended to permit that enforcement mechanism to function in a way that circumvents the purpose of the ADA to prohibit discrimination against qualified individuals with disabilities. In these circumstances there is a minimal cost to determine whether the presence of Phenobarbital was legal. The exemption for drug testing was not meant to provide a free peek into a prospective employee's medical history and the right to make employment decisions based on the unguided interpretation of that history alone.

At this stage in the case, all I have is Connolly's allegations that her offer of employment was rescinded based on a pre-employment positive drug test for Phenobarbital, a substance that was included in a medication legally prescribed to Connolly by her doctor. Connolly attempted to explain the presence of Phenobarbital in her system, but she was refused any chance to do so.[2]

---

[2] The facts and procedure here are different than those in *Myers*, on which FPB relies, because in that case the court considered the text of the defendant company's drug policy, which clearly excluded the use or possession of legally prescribed substances. *Meyer v. Qualex, Inc.*,

A preemployment drug test may not be administered under the guise of testing for illicit drug use when in fact the results are used to make employment decisions based on both legal and illegal drug use alike. It is not difficult to conclude that a drug test revealing use of a substance whose use may be illegal would justify a full scale medical examination or a lesser inquiry. Based on the results of the drug test, FPB could have conducted a further medical examination in order to make a traditional evidence based assessment on how or if Connolly's prescription drug regime would affect her ability to function effectively in her job. Evidence adduced later on may reveal defects in Count III, but at this stage, Connolly has sufficiently alleged that FPB's drug test was more than a mere test for illicit drug use and that FPB used the drug test in order to prohibit the use of even legally prescribed medication without regard to whether such medication would impair Connolly's ability to effectively perform her job.

With regard to FPB's second argument, that Count III fails to state a claim because it does not contain allegations that FPB withdrew its offer of employment based on Connolly's disability or perceived disability, the weight of authority supports the rule that a job applicant alleging an impermissible preemployment disability related inquiry does not have to suffer from a disability or be perceived as disabled in order to find protection under the statute. *See e.g., Fredenburg v. Contra Costa Dept. of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999); *Griffin v. Steeltek*, 160 F.3d 591 (10th Cir. 1998); *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997); *Jackson v. Lake County*, No. 01-6528, 2003 WL 22127743, at *9

---

388 F.Supp.2d 630, 636 (E.D.N.C. 2005). The plaintiff in *Myers* was also given the opportunity to explain that his positive drug test was caused by legal medication. *Id*. In this case, not only were Connolly's attempts to explain the results of her drug test dismissed and/or ignored, but FPB's drug policy is not yet in evidence for me to consider.

6

(N.D. Ill. Sept. 15, 2003); *contra Adler v. I & M Rail Link, L.L.C.*, 13 F.Supp.2d 912, 932-37 (N.D. Ia. 1998); *Varnagis v. City of Chicago*, No. 96-6304, 1997 WL 361150, at *6-7 (N.D. Ill. June 20, 1997); *Krocka v. Bransfield*, 969 F.Supp. 1073, 1094 (N.D. Ill. 1997). In *Jackson*, the court relied on the language of the statute, noting that subsections (d)(2-4) all refer to "employees" and "job applicants," not "qualified individuals with a disability," which is the more restrictive language of section 12112(a), incorporated by reference only in section 12112(d)(1). 2003 WL 22127743, at *9. Limiting these sections to employees or applicants with disabilities would "obliterate much of [the statute's] usefulness" because "[i]t makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring whether or not he has a disability." *See id.*, at *8 (citing *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 969 (8th Cir. 1999)).

The Seventh Circuit has noted in dicta that § 12112(d) "does not require that an individual be disabled to state a claim." *Murdock v. Washington*, 193 F.3d 510, 512 (7th Cir. 1999). But three years later, the court made no reference to *Murdock* and said that it had not yet decided the issue. *See O'Neal*, 293 F.3d at 1007. Other circuits, too, have declined to reach the question of whether nondisabled individuals have a cause of action for violations of § 12112(d). *See, e.g., Tice v. Centre Area Transp. Authority*, 247 F.3d 506, 516-17 (3d Cir. 2001); *Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999); *Armstrong v. Turner Indus.*, 141 F.3d 554, 559 (5th Cir. 1998).

I find the reasoning of *Jackson* and the cases cited therein persuasive. Accordingly, Connolly may maintain a claim under § 12112(d)(3) for FPB's alleged violations of the ADA's

7

provisions limiting preemployment medical testing without alleging that FPB withdrew its offer of employment based on her disability or perceived disability.

For the foregoing reasons, FPB's motion to dismiss Count III is denied.

ENTER:

_James B. Zagel_
James B. Zagel
United States District Judge

DATE: November 18, 2008